UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

LEAH ANN ALDRIDGE,

    Plaintiff,

v.

NYE COUNTY NEVADA *et al.*,

    Defendant(s).

Case No. 2:18-cv-01015-RFB-VCF

**ORDER**

## I. INTRODUCTION

Before the Court is [16] Defendants Joshua Armendariz and Ann Horak's Motion for Summary Judgment. For the reasons stated below, the Court denies the motion in part.

## II. PROCEDURAL BACKGROUND

Plaintiff Leah Ann Aldridge filed a complaint against Defendants Nye County, Nye County Sheriff Sharon Wehrly, Deputy Joshua Armendariz, Deputy Ann Horak, and Lieutenant David Boruchowitz on June 4, 2018. The complaint brought five causes of action: a claim against all Defendants for violation of Plaintiff's Fourth, Eighth, and Fourteenth Amendment rights under 42 U.S.C. § 1983; battery against Armendariz; intentional infliction of emotional distress against all Defendants; civil conspiracy against all Defendants; and negligence and respondeat superior against Wehrly and Nye County.

Defendants Armendariz, Horak, Nye County, and Wehrly filed the instant motion on January 23, 2019 (ECF No. 16). Defendant Boruchowitz joined the motion on January 25, 2019 (ECF No. 22) and filed a separation Motion for Summary Judgment on January 23, 2019 (ECF No. 20).

On September 5, 2019 a hearing was held on both Motions for Summary Judgment (ECF No. 16, 20). The Court granted Boruchowitz's Motion for Summary Judgment (ECF No. 20). ECF No. 32. The Court also granted summary judgment in favor of Defendants Nye County and Sharon Wehrly on the instant motion, and granted in part in favor of Defendants Armendariz and Horak as to Plaintiff's Fourth and Eighth Amendment claims under Count I. Id.

The Court now considers the remaining claims under the instant motion as alleged against Defendants Armendariz and Horak.

### III. FACTUAL BACKGROUND

#### a. Undisputed Facts

Plaintiff was arrested during a traffic stop and detained at Nye County Detention Center ("NCDC") on April 17, 2017. Defendant Armendariz booked plaintiff. Defendant Horak was also present when Plaintiff arrived at NCDC.

Plaintiff was initially placed into a holding cell. Later, Armendariz took Plaintiff out of the holding cell and took her booking photograph. After taking Plaintiff's photograph, Armendariz directed Plaintiff to sit and began to ask her questions. Plaintiff requested to have a lawyer present while she answered questions pursuant to the booking process. Armendariz put Plaintiff back in her cell. Later, Plaintiff was taken out of the cell for fingerprinting and further processing. Plaintiff asked that pictures be taken of her alleged injuries and Horak complied. Plaintiff was later bailed out of the facility.

The surveillance equipment at NCDC has audio as well as video capabilities. Plaintiff requested surveillance footage from Lieutenant Boruchowitz of NCDC during her detention there, who provided it to her after some time.

#### b. Disputed Facts

The parties have different characterizations of the circumstances and the force deployed by Defendant Armendariz when he placed Plaintiff back in her cell.

According to Defendant Armendariz, he took Plaintiff out of her cell and directed her to sit, then asked her intake questions to complete the booking process. Armendariz Decl. Ex. C, at

1, ECF No. 17. Defendants state Plaintiff became agitated during this process and that she would not answer questions without an attorney. Id. Defendants further allege that Armendariz informed Plaintiff she did not have a right to an attorney during the booking process and that she would return to the holding cell if she did not cooperate. Id. at 1-2. Defendants also assert Plaintiff was told to voluntarily return to the cell and ignored instructions, whereupon Armendariz took Plaintiff's arms by the armpit, walked her to the cell, and placed her on the floor. Id. at 2. Defendant Armendariz states he gave Plaintiff multiple opportunities to return to her cell voluntarily before he placed her in the cell and that she "dropped her weight in an attempt to go limp" when he stood her up. Id. at 2.

Plaintiff's version of events differs. Plaintiff states that when asked questions by Defendant Armendariz, she exercised her "Fifth Amendment" rights and asked for an attorney. Aldridge Dep. 20:1, 18:15 Ex. A-1, ECF No. 17. Plaintiff states Defendant Armendariz was agitated, "went into a tirade," walked around the desk, forcibly grabbed Plaintiff from behind, dragged her, then threw her to the floor of the holding cell. Id. at 20:9, 29:19. Plaintiff states that she was never told to get up from her seat and return to her cell voluntarily. Id. at 21:6. Plaintiff states she sustained injuries to her head, neck, elbow, and left side hip. Id. at 70:22. Plaintiff also states that Defendant Armendariz cursed at her. Id. at 17:22.

### IV. LEGAL STANDARD

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); accord Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). When considering the propriety of summary judgment, the court views all facts and draws all inferences in the light most favorable to the nonmoving party. Gonzalez v. City of Anaheim, 747 F.3d 789, 793 (9th Cir. 2014). If the movant has carried its burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine

issue for trial." Scott v. Harris, 550 U.S. 372, 380 (2007) (alteration in original) (internal quotation marks omitted).

"A trial court can only consider admissible evidence in ruling on a motion for summary judgment." Orr v. Bank of America, NT & SA, 285 F.3d 764, 773 (9th Cir. 2002). "We have repeatedly held that unauthenticated documents cannot be considered in a motion for summary judgment." Id. "To survive summary judgment, a party does not necessarily have to produce evidence in a form that would be admissible at trial, as long as the party satisfies the requirements of Federal Rule of Civil Procedure 56." Block v. City of Los Angeles, 253 F.3d 410, 418-19 (9th Cir. 2001). "The court need consider only the cited materials, but it may consider other materials in the record." FRCP 56(c)(3).

## V. DISCUSSION

### A. Count I: Section 1983 Claim

The Court first considers the remaining § 1983 claim that Defendants violated Plaintiff's Fourteenth Amendment rights. To make out a prima facie case under § 1983, a plaintiff must show that a defendant: (1) acted under color of law, and (2) deprived the plaintiff of a constitutional right. Borunda v. Richmond, 885 F.2d 1384, 1391 (9th Cir. 1989).

Under the Fourteenth Amendment's Due Process Clause, "a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law." Bell v. Wolfish, 441 U.S. 520, 535 (1979). "[T]he Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment." Graham v. Connor, 490 U.S. 386, 395 n.10 (1989). Proof of intent or motive to punish is not required to establish a Due Process violation. Kingsley v. Hendrickson, 135 S. Ct. 2466, 2473 (2015). Rather, "a pretrial detainee can prevail by providing only objective evidence that the challenged governmental action is not rationally related to a legitimate governmental objective or that it is excessive in relation to that purpose." Id. at 2473-74 (citing Bell, 441 U.S. 520). In other words, "a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable." Id. at 2473.

///

The Ninth Circuit stated in Gibson v. City of Washoe, Nevada that, "[a]lthough the Supreme Court has not expressly decided whether the Fourth Amendment's prohibition on unreasonable searches and seizures continues to protect individuals during pretrial detention, id., we have determined that the Fourth Amendment sets the 'applicable constitutional limitations' for considering claims of excessive force during pretrial detention." 290 F.3d 1175, 1197 (9th Cir. 2002), overruled on other grounds by Castro v. City of Los Angeles, 833 F.3d 1060 (9th Cir. 2016) (citations omitted). "The Supreme Court's analysis in Graham v. Connor therefore explicates the standards applicable to a pretrial detention excessive force claim in this circuit." Id.

The touchstone of that analysis is whether an officer's conduct was reasonable under the circumstances. Jones v. Las Vegas Metro. Police Dept., 873 F.3d 1123, 1130 (9th Cir. 2017). "[O]bjective reasonableness turns on the 'facts and circumstances of each particular case.'" Kingsley, 135 S. Ct. at 2473 (quoting Graham, 490 U.S. at 396). "A court must make this determination from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." Id. "A court must also account for the 'legitimate interests that stem from [the government's] need to manage the facility in which the individual is detained,' appropriately deferring to 'policies and practices that in th[e] judgment' of jail officials 'are needed to preserve internal order and discipline and to maintain institutional security.'" Id. (quoting Bell, 441 U.S. 520 at 540, 547). Circumstances potentially relevant to a determination of excessive force include: "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." Id.

Defendants state Armendariz's use of force was objectively reasonable because Plaintiff was uncooperative, and Armendariz refrained from using force only after providing Plaintiff the opportunity to voluntarily return to her cell. Additionally, Defendants argue that Plaintiff has not suffered significant injuries from the incident and therefore that the lack of severity of her injuries weighs in favor of Armendariz. Defendants claim that the video surveillance submitted to the Court supports their version of events.

To the contrary, Plaintiff provides evidence in the form of her deposition testimony, wherein she states that Armendariz grabbed her so that she could not get her feet under her and threw her into the cell. She claims that this was unprovoked, unexpected and excessive. Plaintiff states that Armendariz's Declaration indicates he intended to punish Plaintiff for not answering questions by throwing her into the cell and that he went "into a tirade" and began to curse at her before grabbing her and dragging her into the cell.

As an initial matter, Plaintiff's objection to the Armendariz Declaration under Rule 1002 of the Federal Rules of Evidence is without merit. Evidence presented at the summary judgment stage, while required to be admissible at trial, need not yet be in an admissible form. Block, 253 F.3d at 418-19. The Court finds that this declaration is likely to be admissible.

That aside, the Court finds that there is a genuine dispute of material fact as to whether or not Armendariz's purposeful and knowing use of force in putting Plaintiff back in the holding cell was objectively unreasonable. As non-movant, Plaintiff has met her burden of demonstrating a triable issue through her deposition testimony, which refutes both Defendants' characterization of the events before the force and the force itself. Moreover, Defendants' video surveillance of the incident fails to satisfactorily and undisputedly show the events leading up to the moment Defendant Armendariz grabbed Plaintiff, exacerbated by the fact that the video contains no audio. Accepting Plaintiff's version of events as true, what happened *before* Defendant Armendariz grabbed her bears on the reasonableness of his use of force, since Plaintiff asserts that she was given no opportunity to voluntarily return to her cell, and that she was grabbed out of anger and in retaliation.

As to the § 1983 claim against Defendant Horak, Defendants have construed Plaintiff's allegations against her as a failure to intervene claim, see Mot. for Summ. J. at 10, ECF No. 16, which the Plaintiff confirmed in her deposition testimony, see Ex. A-1 at 58:14 ("[Horak] stood there and watched him batter me and did nothing to stop it.").

"[P]olice officers have a duty to intercede when their fellow officers violate the constitutional rights of a suspect or other citizen. In these cases, the constitutional right violated by the passive defendant is analytically the same as the right violated by the person who strikes

the blows. Thus an officer who failed to intercede when his colleagues were depriving a victim of his Fourth Amendment right to be free from unreasonable force in the course of an arrest would, like his colleagues, be responsible for subjecting the victim to a deprivation of his Fourth Amendment rights." United States v. Koon, 34 F.3d 1416, 1447 (9th Cir. 1994), aff'd in part, rev'd in part, 518 U.S. 81 (1996) (citations omitted).

The Court's finding that there is a genuine dispute of material fact as to the objective reasonableness of Defendant Armendariz's use of force is dispositive as to the failure to intervene claim. Plaintiff's deposition testimony that Defendant Horak was present during the encounter and did not intervene is enough to establish a genuine dispute as to whether Defendant Horak failed to intervene when Defendant Armendariz used excessive force, thereby depriving Plaintiff of her Fourteenth Amendment rights.

### B. Qualified Immunity

Defendants argue that even if Defendant Armendariz's use of force was objectively unreasonable, both he and Defendant Horak are entitled to qualified immunity. Specifically, they state there is no existing precedent with would have alerted Defendants to any constitutional deficiency in their conduct and that they acted reasonably given the circumstances.

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231 (2009). Qualified immunity is an immunity from suit rather than a defense to liability, and "ensures that officers are on notice their conduct is unlawful before being subjected to suit." Tarabochia v. Adkins, 766 F.3d 1115, 1121 (9th Cir. 2014). In deciding whether officers are entitled to qualified immunity, courts consider, taking the facts in the light most favorable to the nonmoving party, whether (1) the facts show that the officer's conduct violated a constitutional right, and (2) if so, whether that right was clearly established at the time. Id.

Under the second prong, courts "consider whether a reasonable officer would have had fair notice that the action was unlawful." Id. at 1125 (internal quotation marks omitted). "This requires

two separate determinations: (1) whether the law governing the conduct at issue was clearly established and (2) whether the facts as alleged could support a reasonable belief that the conduct in question conformed to the established law." Green v. City & Cty. of San Francisco, 751 F.3d 1039, 1052 (9th Cir. 2014).  While a case directly on point is not required in order for a right to be clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate." Ashcroft v. al–Kidd, 563 U.S. 731, 741 (2011).  Further, the right must be defined at "the appropriate level of generality . . . [the court] must not allow an overly generalized or excessively specific construction of the right to guide [its] analysis." Cunningham v. Gates, 229 F.3d 1271, 1288 (9th Cir. 2000); see also al–Kidd, 563 U.S. at 742.  "The plaintiff bears the burden of proving that the right allegedly violated was clearly established." Tarabochia, 766 F. 3d at 1125 (citation omitted).

In deciding a claim of qualified immunity where a genuine dispute of material fact exists, the court accepts the version asserted by the non-moving party.  See Bryan v. MacPherson, 630 F.3d 805, 823 (9th Cir. 2010).

With this standard in mind, since the Court has concluded there is a genuine dispute of material fact, the Court accepts Plaintiff's version of events as the non-moving party. Accordingly, Plaintiff has met the first prong of qualified immunity by showing that Defendants' conduct violated a constitutional right. Based on Plaintiff's assertions, Defendants violated her Fourteenth Amendment right by exerting excessive force in dragging Plaintiff to the holding cell and throwing her to the ground, unprovoked and in retaliation.

As for the second prong of the qualified immunity inquiry, Plaintiff has also met her burden in showing that Defendants violated a clearly established right. "A [g]overnment official's conduct violates clearly established law when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'" Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011) (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)); see also U.S. v. Lanier, 520 U.S. 259, 271-2 (1997) ("[G]eneral statements of the law are not inherently incapable of giving fair and clear warning, and in other instances a general constitutional rule already identified in the decisional law may

apply with obvious clarity to the specific conduct in question, even though 'the very action in question has [not] previously been held unlawful.'") (internal citations omitted).

Though Plaintiff has not proffered case law with facts 'identical' to those at issue here, it is nonetheless evident that a "reasonable official" would have understood that forcibly grabbing a person against her will and dragging her, a pretrial detainee, and throwing her to the ground in retaliation is unlawful conduct. Under Plaintiff's version of the facts Defendant Armendariz's conduct was unprovoked and without adequate justification. Thus, neither Defendant can assert that they did not have "fair notice that the action was unlawful."

Consequently, because there is a genuine dispute of material fact and the Court accordingly takes Plaintiff's version of events as the non-moving party, the Court finds that Plaintiff has asserted facts which could establish that Defendants violated Plaintiff's Fourteenth Amendment rights, which were clearly established at the time. Therefore, Defendants are not entitled to qualified immunity. As such, summary judgment is denied on this claim.

**C. Count V: Battery**

The Court next considers Plaintiff's battery claim against Defendant Armendariz. In Nevada, "[t]o establish a battery claim, a plaintiff must show the act: (1) intended to cause harm or offensive contact; (2) caused harm or offensive contact; and (3) such contact did occur." <u>Switzer v. Rivera</u>, 174 F.Supp. 2d 1097, 1109 (D.Nev. 2001).

There is a genuine dispute as to whether Defendant Armendariz's contact with Plaintiff was intended and harmful, for the reasons considered with regard to the Fourteenth Amendment claim discussed *supra*. However, Defendants argue that they are entitled to qualified immunity for Plaintiff's state law claims under Nevada's discretionary-function immunity statute. Mot. for Summ. J. at 23.

/ / /

/ / /

/ / /

The statute states that officers or employees of Nevada may not be held liable for an action that is:

> [b]ased upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of the State or any of its agencies or political subdivisions or of any officer, employee, or immune contractor of any of these, whether or not the discretion involved is abused."

NRS 41.032(2).

In <u>Martinez v. Maruszczak</u>, 168 P.3d 720 (Nev. 2007), the Supreme Court of Nevada adopted the <u>Berkovitz–Gaubert</u> test to evaluate discretionary-act immunity under section 41.032. This two-part test originated with two U.S. Supreme Court decisions interpreting the Federal Tort Claims Act (FTCA), which mirrors section 41.032(2). <u>See</u> <u>Berkovitz v. United States</u>, 486 U.S. 531 (1988); <u>United States v. Gaubert</u>, 499 U.S. 315 (1991).

Under this test, as adopted by the Supreme Court of Nevada, a governmental act or decision is entitled to discretionary-act immunity if it (1) "involve[s] an element of individual judgment or choice and (2) [is] based on considerations of social, economic, or political policy." <u>Martinez</u>, 168 P.3d at 729. This type of immunity may protect even "frequent or routine decisions" at all levels of government, provided they "require analysis of government policy concerns." <u>Id.</u>

To clarify the standard, the Nevada Supreme Court stated that "immunity will likely attach under the second criterion" to actions that are integral to governmental planning or to the formulation of governmental policy, or if liability would disrupt the separation of powers or "jeopardize the quality of the governmental process." <u>Id.</u> As an example, the Court distinguished between "the decision to create and operate a public hospital and . . . college of medicine," which is entitled to discretionary-act immunity, and "a [state] physician's diagnostic and treatment decisions," which do not receive immunity as they "generally do not include policy considerations." <u>Id.</u>

However, there are two limitations on discretionary-act immunity. First, immunity does not attach for actions taken in bad faith. <u>Davis v. City of Las Vegas</u>, 478 F.3d 1048, 1059 (9th Cir. 2007). "Bad faith . . . involves an implemented attitude that completely transcends the circumference of authority granted the individual or entity. In other words . . . an act or omission of bad faith occurs outside the circumference of authority. Stated otherwise . . . an act of bad faith

- 10 -

has no relationship to a rightful prerogative even if the result is ostensibly within the actor's ambit of authority." Falline v. GNLV Corp., 823 P.2d 888, 892 (1991). Second, acts that violate the Constitution cannot be viewed as discretionary. Nurse v. United States, 26 F.3d 996, 1002 (9th Cir. 2000).

Discretionary-function immunity does not apply here. As an initial matter, application of the Berkovitz–Gaubert test demonstrates that the statute is not designed to protect the type of "governmental act or decision" at issue here, that is, the alleged decision and conduct to forcibly grab Plaintiff and throw her into her the holding cell. Though Defendant Armendariz's decision "involved an element of individual judgment or choice," satisfying the first prong of the Berkovitz–Gaubert test, it was not "based on considerations of social, economic, or political policy," and therefore fails the test's second prong. The Nevada Supreme Court's example in Martinez is illustrative here; Defendant Armendariz's decision is equivalent to "a [state] physician's diagnostic and treatment decisions," which do not include "policy considerations." 168 P.3d at 729.

Yet even if Defendant Armendariz's decision did satisfy the Berkovitz–Gaubert test and therefore was protected by the statute, the Court has already found that there is a genuine dispute of material fact as to whether Defendant battered Plaintiff or applied excessive force in violation of her Fourteenth Amendment rights. Assessing the facts in the light most favorable to Plaintiff, a reasonable juror could therefore find that Defendant Armendariz both acted in bad faith and violated Plaintiff's Fourteenth Amendment rights. Necessarily then, even if the statute were applicable, there is a genuine dispute of material fact as to whether its limitations apply. Consequently, Defendants cannot claim immunity under the discretionary-function immunity statute, and summary judgment is denied on this claim.

### D. Count II: Intentional Infliction of Emotional Distress

In order to prevail on a claim of intentional infliction of emotional distress, a plaintiff must show (1) extreme and outrageous conduct with either the intention of, or reckless disregard for, causing emotional distress, (2) the plaintiff's having suffered severe or extreme emotional distress,

and (3) actual or proximate causation. Posadas v. City of Reno, 851 P.2d 438, 444 (Nev. 1993). "Extreme and outrageous conduct," as an element of intentional infliction of emotional distress, "is that which is outside all bounds of decency and is regarded as utterly intolerable in a civilized community; persons must necessarily be expected and required to be hardened to occasional acts that are definitely inconsiderate and unkind." Maduike v. Agency Rent–A–Car, 953 P.2d 24, 26 (1998).

Plaintiff asserts that Defendants' conduct caused her fear, Ex. A-1 at 19:8, and that she does not go out at night anymore as a result of the incident and is upset when she sees police cars coming down the street, id. at 68:24. Defendants argue there is no evidence that the Defendants' conduct was "extreme and outrageous" and that Plaintiff's evidence fails to demonstrate she has suffered from severe or extreme emotional distress as a result of Defendants' purported conduct.

The Court need not determine whether Defendants' conduct rose to the level of "extreme and outrageous," as the Court concludes that, even in the light most favorable to Plaintiff, no rational trier of fact could find that Plaintiff's evidence of emotional distress constitutes "severe or extreme" emotional distress as a result of Defendants' conduct. Therefore, summary judgment is granted in favor of Defendants.

### E. Count III: Civil Conspiracy

Plaintiff's remaining claim is civil conspiracy. "Actionable civil conspiracy arises where two or more persons undertake some concerted action with the intent 'to accomplish an unlawful objective for the purpose of harming another,' and damage results. Thus, a plaintiff must provide evidence of an explicit or tacit agreement between the alleged conspirators. Summary judgment is appropriate if there is no evidence of an agreement or intent to harm the plaintiff." Guilfoyle v. Olde Monmouth Stock Transfer Co., 335 P.3d 190, 198–99 (Nev. 2014) (internal citations omitted).

The Court has already dismissed this claim as to Nye County, Sheriff Wehrly, and Lieutenant Boruchowitz, because Plaintiff failed to proffer evidence of an "explicit or tacit

///

agreement" and plainly stated in her deposition testimony that she cannot. Ex. A-1 at 99:24, 100:8. Summary judgment is therefore granted.

## VI. CONCLUSION

For the reasons stated above,

**IT IS THEREFORE ORDERED** that Defendants' Motion for Summary Judgment (ECF No. 16) in favor of Defendants Armendariz and Horak is DENIED as to Plaintiff's Fourteenth Amendment claim under Count I.

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment (ECF No. 16) in favor of Defendant Armendariz is DENIED as to Plaintiff's battery claim under Count V.

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment (ECF No. 16) in favor of Defendants Armendariz and Horak is GRANTED as to Plaintiff's intentional infliction of emotional distress claim under Count II and civil conspiracy claim under Count III.

**IT IS FURTHER ORDERED** that a joint pretrial order shall be filed in this case by **October 15, 2019**.

DATED: September 27, 2019.

_____
**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**